Pecic, J.,
delivered the opinion of the Court.
John Spicer recites in his petition that he did, on the 4th of February, 1864, enter into two contracts with the United States to furnish twenty-nine hundred cavalry horses. One thousand of the horses wore to have been delivered at Indianapolis, Indiana, on or before the 15th day of March then next, and theremaining nineteen hundred were to have been delivered at Columbus, Ohio, on or before the 25th day of the same month of March. The contracts stipulated that the horses should he sound in all particulars, not less than five nor more than nine years old, from fifteen to sixteen hands high, bridlewise, of size sufficient for cavalry purposes, compactly built, in good flesh, and free from all do *317 fects. To insure the delivery of horses of this description, it was further stipulated that before their acceptance they should be examined and inspected, without unnecessary delay, by a person or persons appointed by the United States; and if, upon such inspection, it should be certified that the horses offered were in all respects as contracted for, and fully equal to the specifications in the contracts, then they should become the property of the government; and such horses as should be condemned and rejected were to bo removed within one day after the contractor should be notified of such rejection. For the horses deliverable at Indianapolis, one hundred and thirty-five dollars was to paid; for those deliverable at Columbus, one hundred and thirty-four dollars was the price.
None of the horses were ever offered for acceptance. The reason assigned for not performing the contract by the petitioner is, that different rules or instructions had been issued on the part of the government as to the manner of inspection to be pursued, more particular and exacting- than had theretofore been followed, and requiring brands to be fixed upon rejected horses, which had not previously been practised.
We do not think this a sufficient excuse for relieving this petitioner from the obligations assumed by him ; much less can he construct a cause of action out of this pretext.
Had the inspection under the new instructions resulted in rejecting such horses as he had contracted to deliver, he might, upon making-proper proof of that fact, and showing bad faith on the part of the inspectors, maintain a footing in court; but he never attempted to perform, nor does he show, except inferentially, that the conditions imposed were so unreasonable that they presented an insuperable barrier to his success had he made an effort.
The government unquestionably had the right, under the terms expressed in these contracts, to require such an inspection of the horses as would insure a faithful compliance with them, and was not to be controlled or limited by antecedent practice in that regard. If the petitioner did not choose to protect himself by stipulation as to the time and manner of inspection, but left the government to exercise all discretion in that behalf, he must abide the consequences of his want of foresight. He cannot shield himself behind a usage so immature as that set up in liis petition, even if a usage of any age could avail him in this connection.
The recitals .of the petitioner as to his arrest and imprisonment, and *318 liis losses by reason thereof, are too remote and accidental to sustain a cause of action. Because the government, or some person supposed to have been acting under its authority, may be supposed to have been guilty of a tort, or false imprisonment, by reason of which the business of the petitioner was injured or neglected, and he thereby suffered loss, does not present such a state of facts as will enable us to entertain jurisdiction. We cannot enter upon so wide a field of judicial doubt and uncertainty as this would indicate.
Mr. J. D. McPherson, for the claimant.
Mr. J. J. Weed, Assistant Solicitor, for the government.
Wc sustain the demurrer and dismiss the petition.